IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL C. Y., | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 24-CV-47-JFJ |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of Social Security, | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Michael C. Y. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are

---

[1] Effective February 19, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 49-year-old male, applied for Title II benefits on December 6, 2021, and Title XVI benefits on January 28, 2022. R. 199-213. In both applications, Plaintiff alleges he has been unable to work since an onset date of December 6, 2021, due to rods, screws, and wire in neck, degenerative issues in lower back, hypertension/high blood pressure, and heart problems. R. 223, 226. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 98-107, 110-118. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on June 2, 2023. R. 37-68, 122-123. The ALJ issued a decision on August 25, 2023, denying benefits and finding Plaintiff not disabled because he could perform other work existing

in the national economy. R. 18-32. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2027. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 6, 2021. *Id.* At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease. R. 22. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 23-25. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found Plaintiff had no limitations in the area of understanding, remembering, or applying information; and mild limitations in the three areas of (1) adapting or managing oneself; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. R. 23.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following limitations: "The claimant frequently is able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should not climb ladders, ropes, or scaffolds." R. 25. At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a construction supervisor. R. 30-31. However, based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Folder, Mail Clerk, and Sorter. R. 31-32. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 32. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id.*

**III.    Issues**

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ failed to provide a narrative discussion explaining how the evidence supports Plaintiff's RFC; and (2) the ALJ failed to fully and fairly develop the record by not ordering a physical consultative examination. ECF No. 12.

**IV.    Analysis**

    **A.    Evidence Related to Plaintiff's Physical Impairments**

The medical records in this case total only thirty-four pages. R. 275-309. These records indicate that Plaintiff presented to Dr. Richard Drake on August 10, 2021. R. 275-278. Plaintiff reported lumbar pain but denied any pain in his lower extremities. R. 275. On physical examination, Plaintiff had an antalgic gait. R. 277. Plaintiff had tenderness, a mildly reduced range of motion, and mild pain on range of motion in the lumbosacral spine. *Id.* Plaintiff exhibited 5/5 motor strength in all tested areas of the lower extremities, except for 4/5 strength in foot eversion. *Id.* Plaintiff's straight-leg raise testing was negative. *Id.* Dr. Drake noted that an x-ray of Plaintiff's lumbar spine revealed severe disc height loss at L1-2 and L5-S1. *Id.* Dr. Drake further noted an MRI of Plaintiff's lumbar spine revealed degenerative disc disease at L1-2 with moderate central canal stenosis and L5-S1 with mild bilateral foraminal stenosis. *Id.* Dr. Drake discussed surgical and non-surgical treatment options with Plaintiff and prescribed Plaintiff pain medication. R. 278.

On September 7, 2021, Plaintiff presented to Dr. Christopher Martin. R. 279-282. Plaintiff reported debilitating bilateral low back pain since March 2021 that worsens with sitting or twisting. R. 279, 282. On physical examination, Plaintiff had an appropriate gait and normal station but his sit to stand was mildly uncomfortable. R. 282. Plaintiff experienced general pain throughout the

lumbosacral spine but exhibited a fair, but tender, range of motion with flexion and extension. R. 280. Plaintiff did not experience any tenderness to touch, rotation, or flexion in the lower extremities. R. 280-281. Plaintiff's straight-leg raise testing was negative, but Plaintiff did experience some pain in the legs with lumbar extension. *Id.* Dr. Martin recommended a steroid injection in Plaintiff's back. R. 282.

From March 2022 to March 2023, Plaintiff reported every three months to his primary care physician, Dr. James Pheonix, for controlled medication follow ups. R. 291-300, 304-309. During these visits, Plaintiff reported that his average level of pain was a 4/10, except for one occasion in September 2022, when he reported his average pain was an 8/10. R. 291, 295, 298, 304, 307. Dr. Pheonix noted that Plaintiff's low back pain was stable with medication management. R. 296, 300, 305, 309. No physical examinations were performed during these visits. Dr. Pheonix's treatment records reflect that Plaintiff had a neck surgery in 2014 and a cervical spine fusion in 2018. *E.g.,* R. 291.

> **B.     Plaintiff's RFC Was Supported by Substantial Evidence and Meets the Requirements of SSR 96-8p.**

Plaintiff asserts the ALJ's RFC determination for a reduced range of light work was not supported by substantial evidence and fails to comply with the "narrative discussion" requirement of SSR 96-8p, 1996 WL 374184 (July 2, 1996). ECF No. 12 at 4-9.

A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite his medical impairments and symptoms. SSR 96-8p, at *2. In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC determination with citations to "specific medical facts (e.g., laboratory findings) and

6

nonmedical evidence (e.g., daily activities, observations)." *Id*. Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

The ALJ's RFC determination meets these narrative requirements. The ALJ provided a detailed summary of Plaintiff's administrative hearing testimony, the imaging of record, and the findings of his treating and reviewing physicians. R. 25-29. The ALJ then explicitly linked this evidence to the decisional RFC. R. 28-29. In finding Plaintiff could perform the standing and walking requirements of light work and the postural limitations outlined in the RFC, the ALJ specifically discussed that: (1) Plaintiff denied that he experienced leg pain to Dr. Drake (R. 28 (citing R. 275)); (2) Plaintiff's straight-leg raise testing was negative (*id.* (citing R. 277, 280-281)); (3) Dr. Martin observed that Plaintiff had an appropriate gait and normal station (*id.* (citing 282)); (4) Plaintiff had no tenderness to touch, rotation, and flexion in the lower extremities (*id.* (citing R. 280-281)); and (5) Dr. Pheonix's treatment records indicated that Plaintiff's back pain was stable with medication management (*id.* (citing R. 291-300, 304-309)). In finding Plaintiff could perform the lifting and carrying requirements of light work, the ALJ specifically discussed Plaintiff's 2014 neck surgery and 2018 cervical spine fusion, but found that the record showed "little, if any treatment for neck pain and related symptoms, including numbness, in the upper extremities." R. 29 (citing R. 291). The ALJ adequately explained the RFC determination as it related to Plaintiff's impairments, and the ALJ's conclusions are supported by substantial evidence.

Plaintiff argues this case is similar to *Veronica M. H. v. Kijakazi*, where the undersigned found the ALJ violated SSR 96-8p "by failing to explain how the medical and non-medical evidence support[ed] the RFC assessment." No. 20-CV-460-JFJ, 2022 WL 709184, at *4 (N.D.

Okla. Mar. 9, 2022). This argument fails. In *Veronica M. H.*, the ALJ merely summarized the medical evidence and then summarily concluded that the decisional RFC "accommodates the Plaintiff's physical impairments and is adequate to address . . . the claimant's bona fide symptoms." *Id.* The court reasoned that the ALJ's general summary of the evidence did not equate to an explanation as to how the plaintiff could perform a reduced range of light work. *Id.* ("[T]he ALJ pointed to no medical opinion, testimony, or other evidence to support his RFC findings in the first instance."). Unlike the ALJ in *Veronica M. H.*, the ALJ in this case explicitly explained how the evidence informed the RFC determination. R. 28-29. For example, the ALJ found that Plaintiff could perform the walking and standing requirements of light work based, in part, on Dr. Pheonix's treatment records that showed Plaintiff's low back pain was stable with medication management, and Dr. Martin's examination that showed Plaintiff's gait was appropriate and his station was normal. R. 28 (citing R. 282, 296, 300, 305, 309).

Plaintiff also argues the ALJ's decision is not supported by substantial evidence, because the ALJ did not support the RFC with evidence of Plaintiff's functioning. ECF No. 12 at 6. In effect, Plaintiff is arguing the ALJ's decision is not supported by substantial evidence because there are no medical opinions in the record. *See id.* at 7-8. Plaintiff's argument is unpersuasive for two reasons. First, the ALJ's RFC need not correspond directly to a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category") (quotation omitted). *See also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with

determining a claimant's RFC from the medical record."); *Robert Lee M. v. Saul*, No. 18-2444, 2019 WL 3079384, at *5 (D. Kan. July 15, 2019) (explaining SSR 96-8p's narrative discussion requirement "does not require citation to a medical opinion"). Instead, the ALJ's RFC only needs to be supported with citations to "specific medical facts" and "nonmedical evidence." SSR 96-8p, at *7. As demonstrated above, the ALJ reviewed Plaintiff's medical records and cited sufficient evidence in support of the RFC.

Second, the absence of a medical opinion in this case is due to Plaintiff's failure to submit evidence. During Plaintiff's initial and reconsideration disability determinations, the state agency reviewers found there was "insufficient evidence to determine the severity of his conditions" because Plaintiff failed to submit information regarding his activities of daily living or work history. R. 71, 75, 80, 84. It is Plaintiff's burden to prove that he is disabled. *See* 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are blind or disabled."). If an applicant for benefits fails to provide evidence, the SSA will make a decision based on the available evidence. *See* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case."); § 416.916 ("You . . . must co-operate in furnishing us with, or in helping us to obtain or identify, available medical or other evidence about your impairment(s). When you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case."). Plaintiff cannot fail to submit evidence and then argue his RFC is unsupported based on this failure.

Despite Plaintiff's contentions otherwise, the Court finds the ALJ considered the evidence related to Plaintiff's physical RFC and adequately explained how such evidence supported the RFC determination. Specifically, the ALJ found that Plaintiff could perform a reduced range of

light work based on treatment records that showed negative straight-leg raise testing; no tenderness to touch, rotation, and flexion in the lower extremities; and stable back pain with medication management. R. 28 (citing R. 277, 280-281, 291-300, 304-309). *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Plaintiff also fails to identify any evidence undermining the ALJ's conclusion that he could perform a reduced range of light work. Because Plaintiff points to no evidence the ALJ overlooked, his arguments amount to a request that the Court re-weigh evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of evidence, not its weight. . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

### C. ALJ Did Not Err in Declining to Order a Consultative Exam

Plaintiff asserts the ALJ erred by failing to develop the record. Specifically, Plaintiff contends the ALJ should have ordered a physical consultative examination ("CE") following the hearing. ECF No. 12 at 9-10. At the hearing, Plaintiff's counsel requested a physical CE, but the ALJ denied the request, as noted in her decision. R. 30, 46.

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)). "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* "The ALJ does not have to exhaust every possible line

10

of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). Instead, the "standard is one of reasonable good judgment." *Id.*

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to . . . determin[e] . . . your claim"); 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). A CE is "often required" where (1) "there is a direct conflict in the medical evidence requiring resolution," (2) "the medical evidence in the record is inconclusive," or (3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has held that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. Generally, an ALJ has "broad latitude in ordering consultative examinations." *Id.* at 1166.

The Court finds the ALJ did not commit error by failing to obtain a physical CE to assess the extent of Plaintiff's limitations. In the decision, the ALJ explained that she refused the CE request because "the evidence in the file is sufficient," specifically noting (1) the August and September 2021 physical examinations, which occurred just a few months before Plaintiff's alleged onset date; (2) Dr. Martin's discussion of the imaging reports on Plaintiff's lumbar spine; and (3) Dr. Pheonix's treatment records that show Plaintiff's low back pain was stable with medication management. R. 30 (citing R. 275-278, 279-282, 291-300, 304-309).

Plaintiff cites to no evidence that would demonstrate the type of material inconsistency that necessitates a CE. Plaintiff instead argues the record is incomplete because there is no medical

11

opinion regarding Plaintiff's functional limitations. However, as noted above, the ALJ did not need a specific RFC opinion from a CE or other medical professional to assess Plaintiff's functional limitations. *See Chapo*, 682 F.3d at 1288; *Howard*, 379 F.3d at 949. *See also Robert Lee M.*, 2019 WL 3079384, at *5 (explaining the "mere lack of a medical opinion suggesting specific physical functional limitations or of other medical evidence addressing specific physical functional limitations does not make the evidence as a whole insufficient to allow the SSA to make a decision"). Further, at the hearing, Plaintiff's counsel did not claim the record was too incomplete for the ALJ to make any disability finding. Rather, Plaintiff's counsel argued there was sufficient evidence to find Plaintiff disabled, but insufficient evidence to find Plaintiff not disabled. *See* R. 46 ("I think there's sufficient evidence to reach [the conclusion that Plaintiff is disabled, but] we don't have a medical opinion regarding functional capacity. . . . If, Your Honor, is not persuaded by the record as it stands, I'd ask you consider a physical CE."). It is unclear how the record could be incomplete for an unfavorable decision yet complete for a favorable one.

    The burden to fully develop the record was met in this case, and the ALJ had sufficient information to determine Plaintiff's RFC based on treatment records, imaging reports, and other non-medical evidence. *See Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with CE because "sufficient information" existed for ALJ to make disability determination); *Brammell v. Colvin*, No. 15-01202, 2016 WL 1170953, at *4 (D. Kan. Mar. 23, 2016) (rejecting argument that "ALJ should have ordered [CE] simply because there was no opinion in the record as to [the plaintiff's] physical limitations due to her back impairment"). *Cf. Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (finding ALJ had duty to develop the record where there was "no substantial evidence upon which to base an RFC finding").

**V.    Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 11th day of March, 2025.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**